

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00107-CV

BANTA OILFIELD SERVICES, INC., Appellant

V.

MEWBOURNE OIL COMPANY, Appellee

On Appeal from the 114th District Court
Smith County, Texas
Trial Court No. 16-0719-C/B

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

In 2014, Mewbourne Oil Company (Mewbourne), a Tyler, Texas, based entity,[1] was operating in the State of New Mexico, drilling for and producing oil and/or natural gas. Mewbourne decided to install a 300-gallon battery tank at a well site there and retained Banta Oilfield Services, Inc. (Banta) to assist in its installation. Mewbourne and Banta entered into a Master Services Agreement (MSA) drafted by Mewbourne, which they both concur governed their relationship.

Mewbourne also contracted with Steve Kent Trucking NM, LLC (Kent Trucking) to be a contractor at the well site in New Mexico. It also entered into an agreement with C&M Services, LLC (C&M) wherein C&M would provide services at the site. An individual named Daniel Vargas worked for Kent Trucking and/or C&M Services as either a direct employee, an agent, or a contractor. Vargas was injured at the New Mexico site when a chain slipped off a tank that was being moved by a Banta-owned-and-operated pole truck. Vargas' wife brought suit against Banta in New Mexico for Vargas' personal injuries.[2] Banta sent a demand letter to Mewbourne seeking

---

[1]Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to the Sixth Court of Appeals by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Tyler Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2]Vargas' pleadings alleged that while lifting a 500-gallon tank "[d]uring [an] improvised procedure," the tank shifted and fell, causing a nearby riser to break loose and fall towards both the Banta and C&M crews. Vargas pushed a Banta crew member out of the way of a falling riser, and in the process, he "suffered serious, debilitating and life-threatening personal injuries." Vargas alleged negligence and sought compensatory and punitive damages, as well as damages for loss of consortium and loss of services. Vargas claimed Banta was vicariously liable for his damages by virtue of the negligent conduct of its employees.

defense and indemnity from Mewbourne.[3] Mewbourne refused Banta's demand, informing Banta that Mewbourne was only a pass-through for defense and indemnification and that Banta should demand a defense and indemnity from Kent Trucking.[4]

Banta brought suit against Mewbourne seeking a judicial declaration that: (1) Texas substantive law applied to the interpretation of the MSA; (2) Mewbourne breached the agreement; (3) Mewbourne was obligated to defend and indemnify Banta in regard to Vargas' personal injury lawsuit; and (4) Mewbourne was responsible to Banta for court costs and attorney fees. In response, Mewbourne argued that New Mexico law applied and that (under it and the MSA) Banta would be responsible for its own actions. Although the parties agreed that their respective liability would be governed by the terms of the MSA, they disagreed as to the interpretation of the contract.

---

[3]In its letter, Banta referenced paragraph 5C of the MSA, which stated,

> **[MEWBOURNE OIL COMPANY] SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD CONTRACTOR GROUP [BANTA OILFIELD SERVICES, INC.] HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO (I) PERSONAL OR BODILY INJURY, ILLNESS, SICKNESS, DISEASE, OR DEATH OF ANY MEMBER OF THE COMPANY GROUP [VARGAS], AND (II) LOSS, DAMAGE OR DESTRUCTION OF REAL OR PERSONAL PROPERTY (WHETHER OWNED OR LEASED) OR ANY MEMBER OF COMPANY GROUP.**

[4]Banta points out that the MSA contained no pass-through language and, in fact, contained language to the contrary in section 5D:

> **THE ASSUMPTIONS OF LIABILITY, RELEASES, AND INDEMNITIES SET FORTH IN THIS ARTICLE 5 SHALL APPLY TO ANY CLAIMS <u>WITHOUT REGARD TO THE CAUSES THEREOF</u>, INCLUDING, WITHOUT LIMITATION, PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, ULTRAHAZORDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, <u>OR THE NEGLIGENCE OF ANY PERSON OR PARTY</u>, <u>INCLUDING THE INDEMNIFIED PARTY OR PARTIES</u>, WHETHER SUCH FORM OF NEGLIGENCE BE SOLE, JOINT AND/OR CONCURRENT, ACTIVE OR PASSIVE, OR ANY OTHER THEORY OF LEGAL LIABILITY.**

In doing so, they disagreed as to whether Texas law applied to the controversy or whether it would be governed by New Mexico law. After the parties filed cross-motions for summary judgment, the trial court denied Banta's motion and entered judgment in favor of Mewbourne, finding that New Mexico law applied to the parties' MSA and that Banta was estopped from arguing otherwise.

On appeal, Banta maintains (1) that Mewbourne's grounds for summary judgment were its affirmative defenses of judicial estoppel and quasi-estoppel, neither of which apply to the facts of this case, and (2) that Banta proved as a matter of law its own entitlement to summary judgment. For the reasons below, we reverse the trial court's order granting summary judgment in favor of Mewbourne, render judgment for Banta on its motion for summary judgment, and remand this case to the trial court for further determination.

## I.        Pleadings at Trial Court

As previously stated, Banta sued Mewbourne in the 114th Judicial District Court of Smith County for breach of contract. It also sought a declaratory judgment regarding the enforceability of the asserted defense and indemnity obligations.[5] In addition, Banta requested an award of attorney fees. Banta's position rested in large part on a provision in the MSA that stated (1) that any suit shall be brought exclusively in the state or federal courts located in Tyler, Smith County,

---

[5]Banta sought a judicial declaration regarding the interpretation of the MSA pursuant to Section 37.001 of the Texas Civil Practice and Remedies Code. Specifically, Banta sought an order declaring that

    A.        Texas substantive law applied to the interpretation of the MSA;

    B.         Mewbourne was in breach of the MSA;

    C.        Mewbourne had an obligation to defend and to indemnify Banta in the Vargas lawsuit; and

    D.        Mewbourne owed Banta the costs of court and attorney fees.

4

Texas, and (2) that "[a]ll disputes, controversies, or claims arising out of or relating to this Agreement . . . shall be governed and controlled by the substantive laws of the State of Texas, excluding any conflict of law or choice of law principles."

Shortly after filing suit, Banta moved for summary judgment on the enforceability of the indemnity provision under Texas law.[6] Mewbourne also moved for summary judgment, arguing that New Mexico law applied and that the principles of judicial estoppel and quasi-estoppel were applicable based on Banta's indemnity agreement in a case that involved a different contract, work site, and parties.[7] *See Pina v. Gruy Petroleum Mgmt. Co.*, 136 P.3d 1029 (N.M. Ct. App. 2016).

---

[6]Specifically, Banta argued that summary judgment should be granted in its favor and against Mewbourne on the following issues:

> (1)     Mewbourne had an obligation under the Master Service Agreement to defend and to indemnify Banta in the pending *Vargas* lawsuit;
>
> (2)     Mewbourne was in breach of the MSA;
>
> (3)     Texas substantive law applied to the interpretation of the MSA; and
>
> (4)     Banta was entitled to recover its attorney fees as a result of Mewbourne's breach of the MSA.

Mewbourne responded to Banta's summary judgment motion, arguing that Banta was attempting to use a Texas choice-of-law provision to obtain indemnity when, in the past, it had used the New Mexico Oilfield Anti-Indemnity Statute (NMOAIS) to void indemnity obligations and to "thwart" a similar choice-of-law provision. According to Mewbourne, Banta is estopped from taking a contrary position in this case.

[7]Mewbourne filed a supplement to its motion for summary judgment, continuing to argue that Banta was attempting to use a Texas choice-of-law provision in the underlying litigation in order to obtain indemnity when, in the past, it had used the NMOAIS to void indemnity obligations.

In addition, Mewbourne filed a third-party petition against Kent Trucking. Banta contends that Mewbourne's claim against Kent Trucking rested on identical indemnity language contained in a MSA between Mewbourne and Kent Trucking. In Mewbourne's petition, it claimed that Kent Trucking was obligated to (1) indemnify Banta as a result of Vargas' claim, or (2) was obligated to indemnify Mewbourne as a result of Banta's claim. The trial court denied Mewbourne's motion for summary judgment against Kent Trucking. It also dismissed Mewbourne's claims against Kent Trucking on September 25, 2017.

Banta subsequently filed an amended motion for summary judgment wherein it asserted the same arguments contained in its original motion, but also offered additional proof to demonstrate the application of the indemnity agreement as it applied to Vargas' claim. Mewbourne filed an amended response to Banta's amended motion for summary judgment. In its amended response, Mewbourne continued to argue the applicability of the principles of judicial estoppel and quasi-estoppel, but also added a choice-of-law analysis under the Restatement (Second) of Conflict of Laws and argued that the indemnity agreement was invalid under Texas law as applied to gross negligence and willful misconduct.

After the trial court held two hearings on the parties' cross-motions for summary judgment, it entered judgment in favor of Mewbourne and denied Banta's motions for summary judgment. Banta appealed, maintaining that the trial court erred in granting Mewbourne's motion for summary judgment and in failing to grant its motion for summary judgment. Banta also contends that it affirmatively demonstrated entitlement to summary judgment on Mewbourne's indemnity obligation. Banta asks this Court to reverse the trial court's judgment in favor of Mewbourne, reverse the trial court's denial of Banta's summary judgment motion, render judgment in favor of Banta on the enforceability of the indemnity provision against Mewbourne and Mewbourne's breach thereof, and remand for a determination on the issues of damages and attorney fees.[8]

---

[8]In the alternative, Banta asks this Court to remand its claims in whole or in part for further trial court proceedings, along with an award of appellate court costs.

## II.     Standard of Review

Appellate courts review de novo the grant or denial of a motion for summary judgment. *Hotze v. Miller*, 361 S.W.3d 707, 712 (Tex. App.—Tyler 2012, pet. denied) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007)). "The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where, as here, "both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Id*. After making a determination as to all of the questions presented, the appellate court must render the judgment the trial court should have rendered. *See Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied).

## III.     Discussion

### A.     Mewbourne's Motion for Summary Judgment

In Mewbourne's motion for summary judgment and its supplement to its motion for summary judgment, Mewbourne argued that the application of judicial estoppel and quasi-estoppel prevented Banta from using "a Texas choice-of-law provision in the Banta/[Mewbourne] MSA to obtain indemnity when, in the past, Banta has used the [NMOAIS] to void indemnity obligations and to thwart a similar choice-of-law provision."[9] The trial court found merit in Mewbourne's

---

[9]In its supplement to its original motion for summary judgment, Mewbourne presented analogous estoppel arguments. Moreover, Mewbourne asserted a very similar position in its response to Banta's motion for summary judgment. In addition, Mewbourne filed an amended response to Banta's motion, continuing to assert its estoppel arguments, but

7

argument and granted judgment in its favor. Therefore, in order for this Court to affirm the trial court's judgment in favor of Mewbourne, we must initially address Mewbourne's contention that the principles of judicial estoppel and quasi-estoppel are applicable to this case. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (finding an appellate court cannot affirm summary judgment on a basis not stated in a party's motion for summary judgment).

### 1. Judicial Estoppel

"Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (per curiam) (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008)). Judicial estoppel is a rule "of procedure based on justice and sound public policy." *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956). Its main function "is to prevent the use of intentional self-contradiction as a means of obtaining fair advantage." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). "The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose

---

also adding a choice-of-law analysis under the Restatement (Second) Conflict of Laws and an argument that the indemnity agreement was invalid under Texas law to indemnify for gross negligence or willful misconduct.

In its appellate brief, Mewbourne presents arguments beyond the estoppel arguments contained in its motion for summary judgment. "[T]he Texas Supreme Court has held that summary judgment cannot be granted except on the grounds expressly presented in [a party's] motion." *Bean v. Reynolds Realty Grp., Inc.*, 192 S.W.3d 856, 860 (Tex. App.—Texarkana 2006, no pet.) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002)). Thus, an appellate court cannot affirm summary judgment on a basis not stated in a party's motion for summary judgment. *Id.* (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993)). Thus, this Court may affirm the trial court's judgment in favor of Mewbourne based only on the estoppel theories contained in Mewbourne's original motion for summary judgment and it supplement to that motion. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).

with the judicial system for their own benefit." *Ferguson*, 295 S.W.3d at 643 (citing *Pleasant Glade Assembly of God*, 264 S.W.3d at 7).

In order for the doctrine of judicial estoppel to apply, a party must show the following: "(1) the opposing party made a sworn, inconsistent statement[10] in a prior judicial proceeding; (2) the opposing party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal." *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528–29 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Swilley v. McCain*, 374 S.W.2d 871, 875–76 (Tex. 1964); *Long v. Knox*, 291 S.W.2d 292, 295 (1956); *In re Estate of Huff*, 15 S.W.3d 301, 309 (Tex. App.—Texarkana 2000, no pet.)). Thus, in order for the trial court to grant summary judgment in favor of Mewbourne based on its judicial estoppel theory, Mewbourne must have presented sufficient summary judgment evidence in support of these four factors.

Maintaining that Banta is estopped from arguing that Texas law applies to the indemnity issues in this case, Mewbourne relies on *Pina*, 136 P.3d 1029, which is an opinion issued by the New Mexico Court of Appeals. In *Pina*, Banta and Gruy entered into a Master Services Contract (MSC) under which Banta agreed to perform work at an oil-well site operated by Gruy in Lea County, New Mexico. The MSC contained a choice-of-law provision requiring the application of Texas law to the company's obligation to indemnify the operator from liability for its own negligence. *Id.* at 1031. Specifically, the MSC provided that it "shall be construed and

---

[10]In order to qualify as a sworn statement under Texas law, the statement must have been made in verified pleadings, an affidavit, or a deposition during the course of sworn testimony. *Aetna Life Ins. Co. v. Wells*, 557 S.W.2d 144, 147 (Tex. Civ. App.—San Antonio 1977), *writ ref'd n.r.e.*, 566 S.W.2d 900 (Tex. 1978) (per curiam).

interpreted in accordance with the laws of the state of Texas." *Id.* Gruy drafted the MSC and signed it in Texas. Banta signed the MSC in New Mexico. *Id.*

In addition, Article 10 of the MSC provided that

> [t]o the fullest extent permitted by law, [Banta] shall indemnify, defend and hold harmless GRUY . . . from and against all claims, damages, losses, liens, causes of action, suits, judgments, fines and expenses, including, but not limited to reasonable attorneys' fees (collectively referred to and defined as "Liabilities"), of any person or entity arising out of, caused by or resulting directly or indirectly from the performance of the work under this Contract, . . . regardless of whether the Liabilities are caused in part by the negligence of any Indemnitee.

*Id.* at 1030–31. Banta purchased liability insurance from Bituminous. *Id.* at 1031. The policy insured Banta against tort liability assumed by contract and named Gruy as an additional insured. *Id.* In March 2003, Pina's wife filed a wrongful death action against Gruy, alleging that her husband had suffered fatal burns in 2002 while employed by Banta at the well site located in Lea County, New Mexico, and which was owned and operated by Gruy. *Id.* Pina alleged that her husband's injuries were caused by the wrongful conduct of Gruy's agents and employees. Pina sought compensatory and punitive damages. *Id.*

Banta intervened in the wrongful death action, seeking a declaratory judgment invalidating the indemnity provision in Article 10 as violative of Section 56-7-2 of the NMOAIS (which was enacted in 1971), and it also filed a motion for summary judgment[11] based on that section.[12] *Id.*

---

[11]Gruy also filed a motion for summary judgment.

[12]Originally, Section 56-7-2 stated as follows:

> A.    Any agreement, covenant or promise contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water . . . which purports to indemnify the indemnitee against loss or liability for damages, for:

10

Notably, in 2003, the New Mexico Legislature amended Section 56-7-2, by including more specific prohibitions on indemnity agreements. *Id.* at 1033. The amended version stated,

> A.    An agreement, covenant or promise, foreign or domestic, contained in . . . an agreement pertaining to a well for oil . . . within New Mexico, that purports to indemnify the indemnitee against loss or liability for damages arising from the circumstances specified in Paragraph (1) . . . of this subsection is against public policy and is void:
>
> (1)    the sole or concurrent negligence of the indemnitee . . . .

N.M. STAT. ANN. § 56-7-2 (West, Westlaw through end of Second Regular Session of 53d Leg.). The district court granted Banta's motion and denied Gruy's motion, ruling that the indemnity provisions of the MSC were against the public policy of New Mexico as expressed in Section 56-7-2 and, thus, were void and unenforceable. *Pina*, 136 P.3d 1031. Gruy appealed.

The New Mexico Court of Appeals affirmed the district court's summary judgment in favor of Banta. Is doing so, it examined conflict-of-laws principles, "observ[ing] that New Mexico courts may decline to enforce a choice-of-law provision in a contract incorporating foreign law if application of foreign law would offend New Mexico public policy." *Id.* at 1032. After discussing the amendment to Section 56-7-2, the appellate court stated,

---

(1)    death or bodily injury to persons; or

(2)    injury to property; or

(3)    any other loss, damage or expense arising under either Paragraph (1) or (2) or both; or

(4)    any combination of these, arising from the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee . . . is against public policy and is void and unenforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Act. . . .

*Pina*, 136 P.3d at 1031.

11

> The Legislature's decision to expressly subordinate freedom of contract to well site safety is a persuasive indicator that the Legislature believed promoting safety at well sites to be an especially important public policy. The Legislature, which we presume was familiar with the strong public policy favoring freedom of contract, nevertheless, chose to elevate the public policy favoring safety at well sites over the public policies underlying freedom of contract.

*Id.* at 1033.

Relying on Banta's position in *Pina*, Mewbourne contends in this case that Banta is precluded from enforcing Mewbourne's indemnity obligation under Texas law. In doing so, Mewbourne emphasizes the factual similarities in this case to those contained in *Pina*, that is, (1) the operator, Gruy, drafted the agreement that included a Texas choice-of-law provision and an indemnity provision; (2) the agreement was signed by Banta in New Mexico; (3) the agreement was signed by the adverse party in Texas; (4) New Mexico was the location of the work to be performed; (5) the event leading to the underlying lawsuit was injury or death to a worker at a well site located in New Mexico; (6) demands for defense and indemnity were made under New Mexico's jurisdiction; and (7) the claims contained in the underlying lawsuit consisted of negligence and gross negligence. Mewbourne points out (1) that in *Pina*, Banta argued that the choice-of-law provision was void and unenforceable since the accident and lawsuit were in New Mexico and (2) that it received affirmative relief based on its argument. Mewbourne contends that the only time Banta makes any distinction in the two cases is when Banta sues in Texas to obtain a defense and indemnity, as opposed to Banta owing a defense and indemnity under similar contract terms and similar facts.

Notably, Mewbourne contends that it was not required to show that Banta made a prior *sworn* inconsistent statement. In support of its position, Mewbourne relies on the Fifth Court of

12

Appeals' opinion in *Webb v. City of Dallas*, 211 S.W.3d 808 (Tex. App.—Dallas 2006, pet. denied). In that case, the trial court upheld a ruling by an administrative law judge terminating Webb's employment from the Dallas Police Department.[13] *Id.* at 811. Webb appealed, complaining of the trial court's ruling and its failure to make and file proper findings of fact and conclusions of law. *Id.* In its opinion reversing the trial court's judgment, the appellate court noted as an additional basis for its opinion that "the doctrine [of judicial estoppel] is most commonly applied to sworn statements of witnesses, [but] it also applies to the statements of attorneys explaining their client's position in the litigation."[14] *Id.* at 820.

The Dallas Court of Appeals' reasoning has little, if any, application to this case. Judicial estoppel seeks to prevent a party from "abus[ing] the judicial process by obtaining one recovery based first on affirming a *certain state of facts*, and then another recovery based on denying the *same state of facts*." *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (emphasis added). In *Webb*, the appellate court made clear that an exception to the general rules of judicial estoppel would apply under a very particular set of circumstances, that is, where contrary statements have been made by a party's attorney relating to distinctly

---

[13]Webb's employment with the police department was terminated due to an arrest and charge of assault on a family member. After entering a plea of nolo contendere, Webb was subsequently sentenced to deferred adjudication community supervision, which he successfully completed. *Webb*, 211 S.W.3d at 811. Because Webb completed community supervision, he was not convicted of the charged offense.

[14]The city first stated that Webb's employment with the police department was based on his *conviction* for family violence assault. The statement was obviously not sworn. Later in the proceedings, the city changed its position regarding the basis for Webb's termination. *Id*. at 818. The court estopped the city from using the latter statement because it was inconsistent with the first statement, stating, "We conclude the City's statements to the administrative law judge that the incident violating the code of conduct was Webb's conviction for family violence assault judicially estopped the City from asserting a contrary position before the district court and this Court." *Id*. at 820.

13

different *factual* assertions made in two separate proceedings in the same case and involving the same parties. That is simply not the case here.[15]

Mewbourne also relies on *Jones v. Jones*, 301 S.W.2d 310 (Tex. App.—Texarkana 1957, writ ref'd n.r.e.). Following Jones' death in April 1952, Jones' wife (Wife) sought to probate his purported last will and testament in the First District Court of Caddo Parish, Louisiana.[16] *Id*. at 311. Jones' will had been dated September 12, 1951 (September Will). *Id*. at 312. Finding it to be Jones' last will and testament, the court admitted the September Will to probate. *Id.* Wife was appointed administratrix and subsequently accepted benefits under the September Will. *Id*.

After the September Will was admitted to probate in Louisiana, certified copies of the will and the order admitting it to probate were filed of record in the office of the County Clerk of Gregg County, Texas. *Id.* In May 1954, Wife, along with several other family members, filed suit in Gregg County averring that Jones had made a will in December 1951 (the December Will) and that several individuals, including attorney Winston Linam (Linam), had conspired to suppress Jones' December Will. *Id.* at 312–13. Wife asked the court to declare the December Will Jones' last will and testament and to make a finding that the probate of Jones' September Will was null

---

[15]Our sister court explained,

> Stated differently, if a party prevails in one action after asserting *the truth of one version of the facts*, he cannot attempt to prevail in a later proceeding by asserting those same facts are not true. Indeed, pursuant to this doctrine, a fact admitted by a prevailing party in a judicial proceeding is established as a matter of law; the admitting party may not in a second proceeding dispute the admission or introduce evidence contrary to it.

*Bailey-Mason v. Mason*, 334 S.W.3d 39, 43 (Tex. App.—Dallas 2008, pet. denied) (emphasis added).

[16]Louisiana was Jones' place of domicile at the time of his death. *Jones*, 301 S.W.3d at 311.

14

and void. *Id*. at 314. After a jury trial, the trial court entered judgment in favor of Wife. Linam appealed.

In the *Jones* opinion, we addressed, among other things, Linam's argument that Wife was estopped from asserting her position in the trial court because she had not only accepted benefits under the September Will, but she was the actual proponent in securing probate of the will in the Louisiana court. *Id*. at 316. In finding that Wife was "very definitely estopped to contest the will under Texas law," we stated,

> Any person who secures the entry of a judgment fully cognizant of all antecedent facts, is estopped to assert any right contrary to such judgment even though the determination made by the prior judgment may not be right. A person is estopped from taking an adverse position in a subsequent suit involving the same matters to a position previously taken in the same matters by pleadings or otherwise. [Wife] having successfully maintained [her] first position in the State of Louisiana, with full cognizance of the contention made in this case, [she] cannot now be permitted to take a position inconsistent therewith.

*Id.* (citations omitted).

Despite Mewbourne's contention, *Jones* does not stand for the proposition that the use of the doctrine of judicial estoppel may be held to be factually sufficient even without the existence of a sworn statement. In fact, *Jones* does not speak to the issue at all, and Mewbourne has conceded this point. Further, the facts contained in *Jones* are not analogous to the facts in this case. In *Jones* we held, "A person is estopped from taking an adverse position in a subsequent suit *involving*, *the same matters* to a position previously taken *in the same matters* . . . ." *Id.* That is not the case here. While the factual background in *Pina* may be similar to the facts of this case, the two cases clearly do not involve the same "matters." Among other things, Mewbourne was not a party to the contract between Banta and Gruy, it had no rights or obligations under the Pina-Gruy contract,

15

and it was not involved in the litigation between the parties who did have rights and obligations under the contract, i.e., Pina and Gruy.

Regardless, this Court has previously made clear that a prior, sworn, inconsistent statement is required in order to establish judicial estoppel. *In re Estate of Loveless*, 64 S.W.3d 564, 580 (Tex. App.—Texarkana 2001, no pet.). More importantly, however, the Texas Supreme Court has held that the doctrine of judicial estoppel applies to any *sworn* statement, whether oral or written, made in the course of a judicial proceeding. *Miller v. Gann*, 842 S.W.2d 641, 641 (Tex. 1992) (per curiam). Moreover, judicial estoppel applies to preclude a different factual position from one previously taken. *Bailey-Mason*, 334 S.W.3d at 43.[17] Here, Banta does not take a different factual position; instead, it takes a different legal position from the position it took in the *Pina* litigation, which litigation did not involve Mewbourne in any way.

---

[17]As we stated previously in *In re Estate of Loveless*:

> There is a line of Texas cases holding that, if a party takes an affirmative position in a proceeding and is successful in having the court adopt its position, that party may be judicially estopped from later taking an inconsistent position in that or in any other proceeding, even though the previous position does not consist of a sworn declaration. *Zipp Indus., Inc. v. Ranger Ins. Co.*, 39 S.W.3d 658, 665 (Tex. App.—Amarillo 2001, no pet.) *see also Thompson v. Cont'l Airlines*, 18 S.W.3d 701, 703–04 (Tex. App.—San Antonio 2000, no pet.); *Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649–50 (Tex. App.—El Paso 1997, writ denied).
>      These cases all involve judicial estoppel invoked by defendants against plaintiffs who failed to list causes of action as potential assets in previous bankruptcy actions. The courts in those cases applied Fifth Circuit precedent rather than Texas law in order to "promote the goal of uniformity and predictability in bankruptcy proceedings." *Andrews*, 959 S.W.2d at 649 n.1.

*Estate of Loveless*, 64 S.W.3d at 579. In addition, the Tyler Court of Appeals' reasoning in *Cleaver* was consistent with the above-mentioned cases. *See Cleaver v. Cleaver*, 140 S.W.3d 771, 775 (Tex. App.—Tyler 2004, no pet.) ("[B]ecause he failed to list this lawsuit as a potential asset in bankruptcy[,] . . . Jimmy [Cleaver] is judicially estopped from pursuing this claim."). Notwithstanding this very narrow exception, however, Texas Supreme Court precedent is clear that in Texas, judicial estoppel requires a sworn inconsistent statement made in a previous judicial proceeding and that the statement was deliberate, clear, and unequivocal. *Id.*

16

In sum, the evidence does not show that Banta made a prior, sworn, inconsistent statement in the *Pina* litigation, and in fact, Mewbourne concedes this point by arguing that proof of a sworn statement is not necessary to support a finding of judicial estoppel. We recognize that there are very narrow exceptions to this rule; however, the facts of this case do not support such an exception.[18] For these reasons, we find that judicial estoppel does not apply in this case.

### 2.        Quasi-Estoppel

The affirmative defense of quasi-estoppel precludes another party from asserting, to another's disadvantage, a right inconsistent with a position he or she has previously taken. *Weaks v. White*, 479 S.W.3d 432, 437 (Tex. App.—Tyler 2015, pet. denied) (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)). The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which he acquired or by which that party accepted a benefit. *In re Estate of Webb*, 266 S.W.3d 544, 552 (Tex. App.—Fort Worth 2008, pet. denied). However, before the acceptance of benefits can trigger estoppel, it must be shown that the benefits were accepted with knowledge of all material facts. *Nash*, 365 S.W.3d 131. "A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for summary judgment." *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 626 (Tex. App.—Tyler 2014, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991)).

Banta maintains that quasi-estoppel requires mutuality of parties and unconscionability, neither of which Mewbourne could show. Quasi-estoppel "may not be asserted by or against a

---

[18]There is no evidence in the record to indicate that Mewbourne was involved in the *Pina* litigation.

17

'stranger' to the transaction that gave rise to the estoppel." *Deutsche Bank Nat'l Tr. Co. v. Stockdick Land Co.*, 367 S.W.3d 308, 315 n.13 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The doctrine precludes a party from accepting the benefits of a transaction and then taking a contrary position to avoid corresponding obligations or effects. *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied). Here, because Mewbourne was neither a party to the contract at issue in the *Pina* litigation nor involved in any way in the controversy over the subject matter of that lawsuit, it was a stranger to the *Pina* litigation and a stranger to the transaction that was made the basis of that lawsuit. For that reason alone, Mewbourne's quasi-estoppel argument is without merit.

In our review, we may address only those grounds expressly presented in Mewbourne's motion for summary judgment and its supplement to that motion. *See McConnell*, 858 S.W.2d at 341. Because we find that neither judicial estoppel nor quasi-estoppel are applicable under the facts of this case, we reverse the trial court's order granting summary judgment in favor of Mewbourne.

## B.    Banta's Motion for Summary Judgment

Banta contends that the trial court wrongly denied its motion for summary judgment, which sought enforcement and determination of Mewbourne's liability for breach of its defense and indemnity obligations. Banta asks this Court to reverse and render judgment in its favor, declaring the defense and indemnity obligations enforceable and finding Mewbourne liable for its breach of contractual obligation.

18

### 1. The MSA's Choice-of-Law Provision

Paragraph 11 of the MSA states:

> All disputes, controversies, or claims arising out of or relating to this Agreement, including the validity, construction, enforcement, or interpretation of this Agreement, shall be governed and controlled by the substantive laws of the State of Texas, **excluding any conflict of law or choice-of-law principles**. In the absence of a mandatory venue prescribed by state or federal law, any suit or proceeding hereunder shall be exclusively in the state or federal courts located in Tyler, Smith County, Texas. Each Party hereby consents to the personal jurisdiction of said state and federal courts and waives any objection that such courts are an inconvenient forum.

(Emphasis added). Banta contends that according to this paragraph, the parties clearly intended Texas substantive law to apply to the interpretation of the MSA. While this issue appears to be one of first impression in Texas, Banta maintains that Texas' contract-construction principles require the same result.

In support of its position, Banta contends that the exclusion is phrased broadly in terms precluding the application of "any conflict of law or choice of law principles."[19] Further, Banta states that under relevant contract-construction principles, this exclusion must have some meaning and that the only meaning that makes sense of the entire agreement is one that precludes the choice-of-law analysis that Mewbourne contends is necessary. According to Banta, "Because Texas is—

---

[19] Banta cites to several non-Texas courts that have limited language to narrow the scope of this exclusion to, for example, the conflicts of law of one particular state. *See Agility Health, L.L.C. v. FPCG Health, L.L.C.*, No. 324571, 2016 WL 4069477, at *4–5 (Mich. Ct. App. July 28, 2016) (per curiam) (unpublished) (only choice of law provision adopted New York law without regarding the conflict of law principles); *OrbusNeich Med. Co., Ltd., BVI v. Boston Sci. Corp.*, 694 F.Supp.2d 106, 113 (D. Mass. 2010) (relying on without reference clause to avoid choice-of-law analysis); *Proctor & Gamble Co. v. Bankers Trust Co.*, 925 F.Supp. 1270, 1288 (S.D. Ohio 1996) (dismissing Ohio statutory claims because "the inclusion of the phrase 'without reference to choice of law doctrine' forecloses the application of Ohio law"); *Turtur v. Rothchild Registry Int'l, Inc.*, 26 F.3d 304, 309 (2d Cir. 1994); *First W. Capital Mgmt. Co. v. Malamed*, No. 16-CV-1961-WJM-MJW, 2016 WL 8358549, at *10–11 (D. Colo., Sept 30, 2016), *rev'd on other grounds by* 874 F.3d 1136 (10th Cir. 2017).

and always will be—the forum and because the forum's conflicts laws apply by default, the parties necessarily intended to preclude *any* choice-of-law analysis that would point away from applying Texas substantive law to their contractual disputes—even if the exclusion of choice-of-law principles were limited to those of Texas."

Maintaining that the parties did not intend for Texas law to apply in relation to any potential indemnification issues, Mewbourne contends that when a declarative contract provision is followed by "excluding," the general rule is that the parties intended to narrow the primary provision by carving out an exception. Thus, according to Mewbourne, the exclusionary language in the MSA means that conflict of law and choice-of-law principles are omitted from and not subject to the parties' attempt to fix the applicable law.[20] Mewbourne also contends that Banta ignores the phrase "substantive laws." Thus, before the comma, the choice-of-law proviso addresses the substantive laws, while after the comma, the exclusion addresses the procedural choice-of-law principles.

> Taken together, the intention is that the parties intend to be governed by Texas substantive laws insofar as they are permitted to make this selection. And in those instances when choice-of-law principles are available to override the parties'

---

[20]Mewbourne states that its position is consistent with the last antecedent doctrine concerning the use of commas. In support of its contention, Mewbourne cites *In re Finley*, 220 S.W.3d 608, 615 (Tex. App.—Texarkana 2007, no pet.). *Finley* concerned the Court's analysis of the legislative intent of a statute. In explaining the "last antecedent doctrine," the Court stated, "Under the last antecedent doctrine, *where no contrary intention appears*, relative and qualifying words, phrases, and clauses are to be applied to the immediately preceding words or phrase. Such words, phrases, and clauses are not to be construed as extending to or modifying others which are more remote. . . ." *Id.* (emphasis added) (quoting 82 C.J.S. Statutes § 333 (1999)).

Here, when reading the MSA in its totality, we are of the opinion that the parties' MSA contained a "contrary intention."

20

choice of substantive law, the parties have chosen to allow for application of the forum state's choice-of-law principles.

This Court disagrees.

When interpretation of a contract is in issue, a court must first determine whether the provisions in question are ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). When determining whether a contract is ambiguous, this Court must examine the contract as a whole in light of the circumstances existing at the time the contract was signed. *Id.* at 393. A contract is ambiguous if, after examining the contract as a whole in light of the circumstances existing at the time the contract was signed and after applying the rules of construction, "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* Notably, a contract is not ambiguous "simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857 (Tex. 2000). Not every difference in interpretation of a contract amounts to an ambiguity. *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993).

In maintaining that New Mexico law applies to any indemnity issues, Mewbourne points to the language contained in paragraph 5F of the MSA, which states,

> The indemnities provided in this Article shall be limited to the extent necessary for compliance with laws or regulations applicable to the performance of Work hereunder, and to the extent any such laws or regulations are in variance with the indemnities provided in this Agreement, such indemnity shall be deemed to be amended so as to comply with such laws or regulations.

21

Mewbourne contends that the exclusionary language contained in paragraph 11, along with language contained in paragraph 5F, clearly shows that the parties intended for New Mexico law to apply to indemnity issues since the work performed took place in New Mexico.[21]

If we were to adopt Mewbourne's position, we would be compelled to consider paragraph 5E alone, while at the same time ignore the remaining provisions of the parties' MSA. It is well settled that no single provision taken alone is given controlling effect; rather, each provision must be considered in the context of the instrument as a whole. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). Here, Mewbourne discounts the language contained in paragraph 5E, which states:

> In the event this Agreement is subject to the indemnity limitations in Chapter 127 of the ***Texas*** Civil Practice and Remedies Code (or any successor statute), and so long as such limitations are in force, each Party covenants and agrees to support the mutual indemnity obligations contained in Sections 5.B and 5.C, by carrying insurance of the types and in the amounts not less than those specified in Article 4 and Exhibit A of this Agreement, for the benefit of the other Party.

(Emphasis added). The language of paragraph 5E clearly demonstrates that the parties intended Texas law to apply, even in regard to indemnity issues. Had the parties intended for New Mexico law to apply, they could have easily included that language in the MSA. Had the parties intended to apply New Mexico law to indemnity issues, the MSA could have stated that the agreement shall be governed and controlled by the substantive laws of the State of Texas, excluding any conflict

---

[21]Contrary to Mewbourne's contention, paragraph 5F can have no effect until after the "applicable" state laws and regulations have been determined. In other words, paragraph 5F does not dictate what state's law applies; instead, only after that determination has been made, does paragraph 5F have any meaning or relevance.

of law or choice-of-law principles, which principles shall be controlled by New Mexico law.[22] In addition, the forum selection clause in the MSA contained a venue provision that clearly stated any potential litigation would take place in Texas; more specifically, Tyler, located in Smith County, Texas.

The Texas Supreme Court has held that courts are required to consider the entire writing, harmonizing and giving effect to all contract provisions so that none will be rendered meaningless. *See id.* at 4. Stated differently, even if the language of the parties' MSA was in conflict, this Court is required to choose an interpretation that harmonizes all of the provisions contained in the agreement. When we review the parties' MSA in its totality, we find that the language contained in their agreement showed the parties' intent that there be no choice-of-law analysis and that Texas law apply regarding any issue arising out of the parties' agreement, including indemnity issues.

### 2. Enforceability of the Choice-of-Law Provision

However, while courts generally honor contracting parties' bargained-for and expressed choice of which state's laws governs the performance of a contract, the contracting parties' freedom to choose what state's law applies is not unlimited. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).[23] Parties "cannot require that their contract be governed by the law

---

[22]Mewbourne states that paragraph 5E added a "flexibility" to the contract, harmonizing its expressed general desire for the application of Texas law with the specific requirements of local law, but without the necessity of redrafting the entire MSA anytime work is to be done in a state that prohibits indemnification for well-site negligence. Mewbourne's contention is not based on a reading of all of the provisions contained in the MSA; rather, Mewbourne speculates, in its favor, as to what the agreement meant based on a single provision in the MSA.

[23]In *DeSantis*, a Florida corporation filed suit in Texas against one of its Texas employees for violating a non-compete agreement. The agreement contained a choice-of-law provision that specified Florida law would govern any disputes under the agreement. *DeSantis*, 793 S.W.3d at 681. In holding that Texas law should govern the dispute despite the choice-of-law provision, the Texas Supreme Court reasoned that Texas law should control because, among other things, "the law governing enforcement of noncompetition agreements is fundamental policy in Texas" and "to apply

23

of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply." *Id*. Notably, applying the law of another state is "not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *Id*. at 680.

In order to determine the enforceability of a choice-of-law provision, we apply principles from the Restatement (Second) of Conflict of Laws. *Id*. at 677–81. Section 187(2) of the Restatement reads as follows:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue *and* which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (AM. LAW INST. 1989 Supp.) (emphasis added). In this case, Texas, the state chosen by Banta and Mewbourne to govern disputes arising out of the MSA, has a substantial relationship to the parties because Mewbourne, the drafter of the

---

the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy." *Id.* at 681. Thus, the court held that enforceability of the non-compete agreement "must be judged by Texas law, not Florida law." *Id.*

MSA, is a Texas corporation doing business in Texas, with its corporate office located in Tyler, Texas. *See DeSantis*, 793 S.W.2d at 678 (finding state had a substantial relationship to the parties because one of the party's corporate offices was located in that state); *see also In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (per curiam) (orig. proceeding) (finding Colorado had a substantial relationship to parties and their transaction because one party's office was located in Colorado). We, therefore, conclude that under these circumstances, Texas has a substantial relationship to the parties and the transaction, and Section 187(2)(a) of the Restatement does not preclude the application of Texas law in this case.

Next, we determine, pursuant to Sections 187(2)(b) and 188(1),[24] (1) whether the application of Texas law would be contrary to a fundamental policy of New Mexico, (2) whether New Mexico has a materially greater interest in determining the issue of indemnity, and (3) whether New Mexico has the most significant relationship to the transaction and the parties. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187(2)(b), 188(1); *DeSantis*, 793 S.W.2d at 678). "We must enforce the parties' choice-of-law *unless all three elements of this test are satisfied*." *Gator Apple, LLC v. Apple Tex. Rests., Inc.*, 442 S.W.3d 521, 533 (Tex. App.—Dallas 2014, no pet.) (citing *Mary Kay, Inc. v. Woolf*, 146 S.W.3d 813, 816 (Tex. App.—Dallas 2004, pet. denied) (emphasis added)). Thus, if we find that even one of the three factors favors the

---

[24]Section 188(1) states, "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (AM. LAW INST. 1971).

parties' choice of Texas law, we are not compelled to examine the remaining two. *See Gator Apple*, 442 S.W.3d at 533; *see also* TEX. R. APP. P. 47.1.[25]

Whether there is a state with a more significant relationship to the parties and the transaction at issue than the one contractually specified by the parties is determined pursuant to five factors that are set out in Section 188(2) of the Restatement. *DeSantis*, 793 S.W.2d at 677–78. The factors are as follows: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. LAW INST. 1971). These factors are to be taken into account "in light of the basic conflict of laws principles of section 6 of the RESTATEMENT." *DeSantis*, 793 S.W.2d at 678.

We find that Texas has the most significant relationship to the parties and the transaction in regard to the first, second, and fifth factors. Mewbourne, the drafter of the agreement, is domiciled in Texas and conducts business in Texas. Its business office is located in Texas. Further, Banta maintains, and Mewbourne does not dispute, that Mewbourne drafted the MSA in Texas and signed the agreement in Texas. We recognize that Banta is a New Mexico company and that it signed the agreement in New Mexico. Despite those facts, we find, among other reasons, that because Mewbourne drafted the agreement in Texas, Texas, and not New Mexico, has a more significant relationship to the substantive issue before us.

---

[25]Rule 47.1 provides, "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1.

26

In regard to the third and fourth factors, we find that Texas has a more significant relationship to the parties and the transaction than does New Mexico. Notably, Vargas' accident occurred while he was performing work in New Mexico; however, the parties' agreement is silent as to where any of the work was to be performed. The MSA did not state that New Mexico would be the place of performance. In fact, there is no mention of New Mexico in the entire agreement. More importantly, however, the issue in this case involves the enforceability of the indemnity provision in the MSA, and not the work that had been performed in New Mexico pursuant to that agreement. "What is determinative is which state has the most significant relationship *with respect to the indemnity issue*," and not the location of the work.[26] *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 173 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The past performance of the work is not at issue here. The only dispute remaining is wholly related to the performance of the MSA's indemnity provision, a dispute that has been litigated entirely in Texas.

Further, the MSA was written in a manner showing the parties anticipated and intended that the provisions of the agreement would control regardless of the location of the work being performed. In fact, the parties agreed in paragraph 5E that the provisions of Chapter 127 of the Texas Civil Practice and Remedies Code, entitled "Indemnity Provisions in Certain Mineral Agreements," would apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 127.001–.007 (West 2011). Chapter 127.005 addresses indemnity obligations and insurance coverage. TEX. CIV. PRAC.

---

[26]Banta sought defense and indemnity from Mewbourne with respect to the Vargas lawsuit by sending a letter to Mewbourne's office in Tyler, Texas. The insurance company that drafted and sent the demand letter on Banta's behalf was located in Houston, Texas.

& REM. CODE ANN. § 127.005. Not only was a Texas statute regulating indemnity specifically referred to in the MSA, but both parties agreed to comply with the Texas statute by purchasing an adequate amount of insurance.[27] "[Mewbourne] can hardly be shocked that Texas law applies, as the indemnity clauses and insurance coverage were specifically drafted to meet Texas law." *Chesapeake*, 94 S.W.3d at 177.

In addition, Section 6 of the Restatement sets out several non-exclusive factors that may be considered in determining the applicable law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (AM. LAW INST. 1971). Section 6 factors are:

(a)     the needs of the interstate and international systems,

(b)     the relevant policies of the forum.

(c)     the relevant policies of other interested states and the relative interests of those states in determination of the particular issue,

(d)     the protection of justified expectations,

(e)     the basic policies underlying the particular field of law,

(f)     certainty, predictability and uniformity of result, and

(g)     ease in the determination and application of the law applied.

*Id.*

---

[27]Exhibit A is attached to the parties' MSA and states, in part, "During the term of this Agreement, unless otherwise prohibited by law, each Party shall, at each Party's sole expense, carry with solvent and reputable insurance carriers, insurance of the types and in the minimum amounts . . . ." The document set out the minimum dollar amount of insurance the parties were required to carry for commercial (or comprehensive) general liability insurance, workers' compensation insurance, employer's liability insurance, automobile liability insurance, pollution insurance, and excess (or umbrella) liability insurance.

Here, the enforcement of the MSA in accord with its terms satisfies the relevant policies of the chosen forum (that is Texas). *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). In addition, the principles of certainty, predictability, and uniformity support the application of Texas law. "Industry and commerce cannot operate in a climate that allows a contracting party to make a bad bargain to change the terms of a deal at its option." *Chesapeake*, 94 S.W.3d at 177. Here, if New Mexico law were applied to the indemnity issue, as Mewbourne maintains, it would have relieved Mewbourne of the defense and indemnity it agreed to provide Banta. Certainly, Banta had a justified expectation that Mewbourne would comply with the terms of an agreement that Mewbourne negotiated, drafted, and signed (all in Texas). Moreover, Mewbourne and Banta purchased insurance in order to comply with Texas law. Had the parties expected New Mexico law to apply, there would have been no reason to include such a requirement in their agreement.[28]

When we consider the Restatement's factors, along with the quality and quantity of each of the parties' contacts to Texas and New Mexico, we find that Texas has the "most significant relationship to the transaction and the parties." *See* RESTATEMENT (SECOND) CONFLICT OF LAWS

---

[28]Mewbourne maintains that if Texas law were applied to the facts of this case, such application would be in violation of New Mexico's public policy against the use of indemnity provisions imposing indemnity obligations for an indemnitee's own negligence. Unlike New Mexico, Texas does not prohibit such an indemnity agreement if "the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 127.005(a) (West 2011). We are unwilling to find, nor is it necessary to do so, that the enforcement of an indemnity agreement indemnifying the indemnitee against its own negligence supported by insurance directly contravenes New Mexico's public policy of assuring the safety of its oilfield workers. Even assuming it does, when we rely on Texas' public policy favoring freedom of contract, along with the numerous other factors favoring the use of Texas law, this factor, alone, is not determinative.

§§ 187(2)(b), 188(1). As such, we must enforce the parties' choice of Texas law. For these reasons, we hold that Texas law governs the enforceability of the MSA's indemnity provision.

### 3. Enforceability of MSA under Texas Law

In order for this Court to grant its requested relief, Banta was required, pursuant to the laws of Texas, to present sufficient competent summary judgment evidence to show that Mewbourne's defense and indemnity obligations were enforceable pursuant to the terms of the MSA.

### a. Coverage of Vargas' Claim

Mewbourne maintains that the provisions of the MSA did not cover Vargas' personal injury claim because Vargas was not Mewbourne's employee. Paragraph 5C of the MSA states that Mewbourne, as "Company Group," would release, indemnify, defend, and hold Banta, as "Contractor Group," harmless against any and all claims resulting from, among other things, personal injury.[29] In paragraph 5.A.3, Company Group is defined as:

> (i) Company, its parent, subsidiary and affiliated or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint operators, and joint venturers, if any, and their respective parent, subsidiary and affiliated or related companies, (iii) Company's other contractors of any tier, and (iv) the officers, directors, employees, agents, consultants, and invitees of any and all of the foregoing.

The summary judgment evidence shows that on February 17, 2015, Mewbourne contracted with Kent Trucking to be a contractor at the New Mexico site. Further, in the plethora of summary judgment evidence provided to the Court, we find a letter written and sent by Mewbourne's counsel to Kent Trucking, which letter had been written following Vargas' accident. In it, Mewbourne's

---

[29]*See infra* note 3 (referring to paragraph 5C).

30

counsel explained, "At the time of the incident Daniel Vargas was employed by C&M Services LLC who either shares the same ownership as [Steve Kent Trucking] or was a subcontractor of [Steve Kent Trucking]." There is even stronger evidence of this relationship in Mewbourne's responses to Vargas' interrogatories, where Mewbourne ratified that Vargas was either employed by or was a contractor for Kent Trucking when the injury occurred.

Based on the summary judgment evidence, we find that Banta demonstrated that Vargas was at the very least a "contractor[] of any tier," or Mewbourne's invitee, and that Vargas had asserted a claim against Mewbourne for the injury he incurred while working at the New Mexico site. As such, the MSA covers Mewbourne's indemnity and defense obligations to Banta as it relates to the Vargas lawsuit.

### b. Fair Notice Requirements

Banta seeks indemnity from Mewbourne for the consequences of its own negligence. Indemnity agreements used to exculpate a party from the consequences of its own negligence involve an extraordinary shifting of risk. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Thus, fair notice of the risk shifting must be given to the party assuming the shifted risk. *Id*. at 508–09. "The fair notice requirements include the express negligence doctrine and the conspicuousness requirement." *Id*. at 508. "The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract." *Id*. "The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Id*. (quoting *Ling & Co. v.*

31

*Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)). "Either an indemnity provision is clear and enforceable, or it is not." *DDD Energy, Inc. v. Veritas DGS Land, Inc.*, 60 S.W.3d 880, 883 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Fisk Elec. Co. v. Constructors & Assoc., Inc.*, 888 S.W.2d 813, 815 (Tex. 1994)).

Banta points out that the Texas Supreme Court (along with several appellate courts) has held that the express-negligence doctrine is satisfied when "regardless" language is included as part of the parties' indemnity provision. *Ensearch Corp. v. Parker*, 794 S.W.2d 2, 6–7 (Tex. 1990). In *Ensearch*, the indemnity agreement provided that "[the indemnitor] would indemnify [the indemnitee] for any claims 'regardless of whether such claims are founded in whole or in part on alleged negligence of [the indemnitee.]" *Id*. at 8. The agreement in *Ensearch* also provided that "[the indemnitor] 'further agrees to indemnify and hold harmless [the indemnitee] . . . in respect of any such matters.'" *Id*. at 7. The Texas Supreme Court held that "an indemnity agreement need not be confined to one sentence" when it is clear that that "the contract as a whole is sufficient to define the parties' intent that [the indemnitor] indemnify the [indemnitee] for the consequences of the [indemnitee's] own negligence." *Id.* at 8.

Here, paragraph 5D of the parties' MSA states,

**THE ASSUMPTIONS OF LIABILITY, RELEASES, AND INDEMNITIES SET FORTH IN THIS ARTICLE 5**[30] **SHALL APPLY TO ANY CLAIMS <u>WITHOUT REGARD TO THE CAUSES THEREOF</u>, INCLUDING, WITHOUT LIMITATION, PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, ULTRAHAZORDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, <u>OR THE NEGLIGENCE OF ANY PERSON OR PARTY, INCLUDING THE INDEMNIFIED PARTY OR PARTIES</u>, WHETHER SUCH FORM OF NEGLIGENCE BE SOLE, JOINT AND/OR**

_____

[30]*See infra* note 3 (referring to paragraph 5C).

32

**CONCURRENT, ACTIVE OR PASSIVE, OR ANY OTHER THEORY OF LEGAL LIABILITY.**[31]

The plain language of the MSA shows that the parties intended for Mewbourne to indemnify Banta, "without regard to the causes thereof," and that it contracted to do so even in the event the claim was a result of Banta's own negligence. Further, the MSA consisted of seven pages of single-spaced language, with the majority of its contents written in lower-case letters. The language contained in paragraphs 5C and 5D, however, consist entirely of capital letters, along with bold type-face. In general, "[l]anguage that appears in contrasting type or in capitals satisfies the conspicuousness requirement." *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001), *superseded by statute on other grounds by Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494 (Tex. 2015). We, therefore, find that the indemnity provision of the MSA satisfies the express negligence doctrine and the conspicuousness requirement; thus, Mewbourne had fair notice that it agreed to indemnify Banta, even for Banta's own negligence.[32]

---

[31]In Texas, oilfield indemnity clauses are generally void. TEX. CIV. PRAC. & REM. CODE ANN. § 127.003 (West 2011). There are, however, several exceptions, including one for indemnities that are mutual and supported by liability insurance. TEX. CIV. PRAC. & REM. CODE ANN. § 127.005 (West 2011); *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 346 (Tex. 2000). In this case, paragraph 5E states,

> In the event this Agreement is subject to the indemnity limitations in Chapter 127 of the Texas Civil Practice and Remedies Code (or any successor statute), and so long as such limitations are in force, each Party covenants and agrees to support the mutual indemnity obligations in Section 5.B and 5.C, by carrying insurance of the types and in the amounts not less than those specified in Article 4 and Exhibit A of this Agreement, for the benefit of the other Party.

Attached to the parties' agreement is Exhibit A, which sets out in detail the parties' obligations regarding the types and minimum amounts of insurance the parties were required to procure. Thus, by the terms of the contract, both companies were required to maintain a sufficient amount of liability insurance.

[32]In *Dresser*, the Supreme Court of Texas extended the "fair notice" requirements applicable to an agreement providing for indemnity against a party's own negligence to a contractual release in which one party relieves the other in advance of liability for the latter's own negligence. The Court reiterated the components of the fair notice requirements as previously applicable to an indemnity agreement, that is, (1) the "express negligence doctrine," mandating that the provision specifically express within its four corners intent to indemnify a party against its own

33

Despite this language, Mewbourne maintains that the MSA included no requirement that it indemnify Banta on claims relating to punitive damages or gross negligence. We disagree. The MSA contains a list of claims that would be covered by the indemnity provision: latent or patent conditions, ultrahazardous activity, strict liability, tort, breach of contract, breach of duty, or breach of safety requirements or regulations. Moreover, the provision clearly includes language extending its duties to Mewbourne, that is, "including without limitations" and "without regard to the causes of action thereof." It is plain that Mewbourne drafted this agreement. As the drafter of the agreement, Mewbourne cannot now maintain that it intended anything other than to indemnify Banta in relation to any cause of action, including gross negligence claims and punitive damages claims.

## IV. Conclusion

Based on the foregoing, we find that Texas law applies to the terms of the parties' MSA; that under Texas law, Mewbourne had the obligation to defend and indemnify Banta against Vargas' claims; that it breached its contractual obligation to Banta by refusing to do so; and that Banta is entitled to recover damages and its attorney fees.

We, therefore, reverse the trial court's summary judgment in favor of Mewbourne, reverse the trial court's denial of Banta's motion for summary judgment and render judgment in favor of

---

negligence, and (2) the "conspicuousness" requirement, mandating "that something must appear on the face of the [agreement] to attract the attention of a reasonable person when he looks at it." *Dresser*, 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)). However, the Court also stated, "The fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement." *Id.* at 508 n.2 (citing *Cate v. Dover Corp.*, 790 S.W.2d 559, 561).

The summary judgment evidence in this case shows that Mewbourne had actual knowledge of the indemnity provision.

34

Banta on the enforceability of the indemnity provision against Mewbourne and Mewbourne's breach thereof; and remand to the trial court for a determination of damages and attorney fees.


Bailey C. Moseley
Justice

Date Submitted:      August 1, 2018
Date Decided:        December 4, 2018