COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| YOUNG MENS CHRISTIAN ASSOCIATION OF GREATER EL PASO, TEXAS AND RIO GRANDE VALLEY and FRED & MARIA LOYA YMCA, | § § § | No. 08-11-00096-CV  Appeal from  327th District Court |
| | § | |
| Appellants, | | of El Paso County, Texas |
| | § | |
| v. | | (TC # 2010-4111) |
| | § | |
| JOSE G. GARCIA, | | |
| | § | |
| Appellee. | | |

**O P I N I O N**

This is an interlocutory appeal from an order denying a motion to compel arbitration filed by the Young Mens Christian Association of Greater El Paso, Texas and Rio Grande Valley, YMCA of Greater El Paso, YMCA of El Paso, and Fred & Maria Loya YMCA (collectively referred to as the YMCA). For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

The YMCA employed Jose G. Garcia from 1997 until early 2010. Garcia sustained an on-the-job injury in December 2009 and filed a claim for worker's compensation benefits. When Garcia returned to light duty in January 2010, the YMCA asked him to sign a form indicating his acceptance of a reduction of work hours to part-time employment and loss of benefits. Garcia refused to sign the form and the YMCA immediately terminated his employment. Garcia filed suit alleging discrimination based on his age and race as well as retaliatory discharge for pursuing worker's compensation benefits.

The YMCA filed a motion to compel arbitration based on a dispute resolution provision found in its personnel policy manual. In 2004, Garcia signed a document acknowledging that he had received a copy of the personnel policy manual. The manual included a dispute resolution policy which required employees to arbitrate "all disputes relating to, or arising out of, an employee's employment with the Association, including claims regarding termination of employment." Garcia argued in the trial court that there was no arbitration agreement because the personnel policy manual stated that it was not a contract and did not alter the terms of employment. He also argued that the arbitration agreement is illusory because the YMCA reserved the right to unilaterally retract, revoke, or change the policy manual's provisions at any time. Following a hearing, the trial court denied the motion to compel. The YMCA filed notice of interlocutory appeal. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 51.016 (West Supp. 2010)(in a matter subject to the FAA, a party may appeal from a judgment or interlocutory order under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16).

## ARBITRATION

In its sole issue, the YMCA contends that the trial court erred by not ordering Garcia's claims to arbitration. We disagree.

### *The Personnel Policy Manual*

The YMCA's personnel policy manual is approximately seventy pages in length and covers numerous topics, including hiring, rehiring, personnel files, work schedules, compensation, benefits, absence from work, health and safety, employee conduct, employee relations, and discipline. The acknowledgment signed by the employee indicating his receipt of the policy manual is not a separate document but is found in Section I of the manual on page six. The acknowledgment signed by Garcia in 2004, states as follows:

I understand that the Personnel Policy Manual is a general guide only and that the provisions of this manual do not constitute an employment contract or alter my status as an 'at-will' employee.

I understand that no manager has the authority to make oral promises or contracts with regard to my employment or the YMCA of Greater El Paso's policies or procedures and that I should not rely upon any representation concerning my employment unless made in writing and signed by the President/CEO or Human Resource Director of the YMCA of Greater El Paso.

I further understand that the YMCA of Greater El Paso reserves the right to unilaterally retract, revoke, or change the provisions of this manual at any time.

The contents of this manual are to be considered general suggestive guidelines only. In matters of discipline, the YMCA of Greater El Paso may, where management deems appropriate, apply a system of progressive discipline and management may review, at its discretion, any discharge case upon request. Each discipline and/or discharge case, however, is unique, and decisions will be made on a case-by-case basis.

Employees who have questions about a discharge or discipline situation are encouraged to utilize the problem resolution process. The YMCA of Greater El Paso reserves the right to be the sole judge of what constitutes appropriate policies or procedures and/or reasons for discharge or discipline.

I have received a copy of this manual and agree to read it within the first week of receipt and abide by its provisions. I will ask for clarification if needed for clear understanding of the contents.

Section II of the manual bears the heading "General" and it includes a statement regarding the employment at will status of employees and the dispute resolution policy at issue in this case. The section entitled "Statement of Employment at Will" reads as follows, in part:

This manual is not intended to create any contractual rights in favor of the employee or the Association. No policy manual can anticipate every circumstance or question about policy. As business conditions necessitate the Association reserves the right to revise, supplement, or rescind any policies or portion of the manual from time to time, as it deems appropriate, in its sole and absolute discretion. Employees will be notified of such changes to the manual as they occur, and each employee will be given a copy of the new or revised policy to insert into this manual.

The dispute resolution policy provides that if disputes cannot be resolved informally, employees are

required to resolve disputes through final and binding arbitration under the Federal Arbitration Act.

With respect to modification, the dispute resolution policy states:

> The [YMCA] will not modify or change this Policy and the requirement to use final and binding arbitration to resolve employment-related disputes without notifying the employee at least ten (10) days in advance. Such notice must be in writing. Any dispute which is pending at the time of such notice or which arises within the ten-day period will still be subject to this Policy.

The dispute resolution policy also includes a subsection entitled "Agreement" which reflects the YMCA's and the employee's agreement to the policy. It states:

> By adopting this Policy, the [YMCA] has agreed to be bound by its terms. Any employee accepting or continuing employment after October 1, 2003, also agrees to be bound by the Policy as a condition of his or her employment.

*Standard of Review*

It is undisputed that the Federal Arbitration Act (FAA) applies to this proceeding. *See* 9 U.S.C.A. §§ 1-16 (West 2009). A party seeking to compel arbitration under the FAA must: (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig.proceeding); *Budd v.Max International, LLC*, 339 S.W.3d 915, 918 (Tex.App.--Dallas 2011, no pet.). The trial court's determination of the arbitration agreement's validity is a legal question subject to *de novo* review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the trial court finds the agreement is valid, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.*

*Did the Parties Agree to Arbitrate?*

The first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply ordinary state law principles governing

the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). When deciding whether the movant met its burden to establish a valid agreement to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. The party attempting to compel arbitration must show that the arbitration agreement meets all requisite contract elements. *Id*. at 228.

The following elements are required for the formation of a valid and binding contract: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex.App.--Dallas 2006, pet. denied); *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex.App.--Fort Worth 2004, pet. denied). Like other contracts, arbitration agreements must be supported by consideration. *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex.App.--Houston [14th Dist.] 2006, no pet.).

Garcia argued in the trial court that there was no arbitration agreement because both the acknowledgment and the personnel policy manual state that the manual does not create an employment contract and the provisions do not alter an employee's at-will status. We view this argument as challenging the third and fourth elements. The YMCA is correct that at-will employment does not preclude formation of other contracts between employer and employee. *See In re 24R, Inc.,* 324 S.W.3d 564, 566-67 (Tex. 2010); *J.M.Davidson*, 128 S.W.3d at 228. Thus, the language in the acknowledgment and the personnel policy manual that Garcia remained an at-will employee does not negate the existence of an arbitration agreement. *See In re Tenet Healthcare,*

*Ltd.,*, 84 S.W.3d 760, 766 (Tex.App.--Houston [1st Dist.] 2002, orig. proceeding)(merely reaffirming that an employment relationship is at-will does not negate the existence of an arbitration agreement). When the dispute resolution policy is examined as if it were a separate, stand-alone document, it satisfies the elements of a contract and reflects that the YMCA and any employee who accepted employment or continued to work after October 1, 2003 agreed to arbitrate employment-related disputes under the FAA. But the dispute resolution policy is not a separate document and it does not merely reaffirm Garcia's status as an at-will employee. It is one of numerous policies found in a personnel policy manual which required employees to acknowledge that the manual is a "general suggestive guideline only" and does not create an employment contract. The manual pointedly states that "this manual is not intended to create any contractual rights in favor of the employee or the [YMCA]." Significantly, it does not except the dispute resolution policy from the reach of the disclaimers.

Citing *Forbau v. Aetna Life Insurance Company*, the YMCA acknowledges the disclaimers but maintains that the general language of the policy manual does not control the specific language found in the dispute resolution policy. When construing provisions of a contract, controlling effect must be given to specific provisions over general provisions. *Forbau v. Aetna Life Insurance Company*, 876 S.W.2d 132, 133-34 (Tex. 1994). This rule presumes the existence of a contract. The YMCA has not cited any authority for applying this rule when determining whether an agreement exists in the first place and we have found none.

In light of the disclaimers found in the personnel policy manual, we conclude that the dispute resolution policy is not a valid arbitration agreement. *See Harmon v. Hartman Management, L.P.*, No. Civ.A. H-04-1597, 2004 WL 1936211 (S.D. Tex. Aug. 24, 2004)(finding arbitration agreement was unenforceable because it was contained in an employee handbook which expressly disavowed

any intent to create a contract and because it permitted employer to modify provisions in the handbook at any time).  *Cf United States ex rel. Harris v. EPS, Inc.*, 2006 WL 1348173, *5 (D. Vt. 2006)(applying Vermont contract law, court concluded that acknowledgment form which included arbitration agreement was part of the employee handbook to which it was attached and held that "where an employer uses disclaimers indicating that it does not intend to be bound by the policies in an employee handbook, the employer cannot enforce a policy of mandatory arbitration, even if the employee has signed an acknowledgment form"); *Heurtebise v. Reliable Business Computers, Inc.*, 550 N.W.2d 243, 247 (Mich. 1996)(applying Michigan contract law, employee handbook containing arbitration provision did not create an enforceable contract where the opening statement in the handbook stated that the policies specified in the handbook did not create any employment or personal contract).  Because we have determined that the dispute resolution policy is not a valid contract, it is unnecessary to address whether it is an illusory contract because the YMCA retained the right to modify the policies found within the personnel policy manual at any time.  We overrule the YMCA's sole issue on appeal and affirm the order denying the motion to compel arbitration.


October 26, 2011

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and DeHart, J.
DeHart, J., sitting by assignment